# EXHIBIT A

Case 1:19-cv-06739   Document 2-1   Filed 11/29/19   Page 2 of 26 PageID #: 12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| ──────────────────────── X | |
| YISROEL LEFKOWITZ, on behalf of himself and all others similarly situated, | Index No.: |
| Plaintiffs, | |
| v. | **SUMMONS** |
| GOOGLE LLC, a Delaware limited liability company; and ALPHABET INC., a Delaware Corporation, | **Plaintiff designates Kings County as Place of Trail. Basis of Venue § 503** |
| Defendants. | |
| ──────────────────────── X | |

     **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer in Supreme Court, Civil Term, Kings County, New York, at 360 Adams Street, Brooklyn, New York, 11201. The Complaint of Plaintiff is herein attached and it is necessary to serve a copy of your Answer on Plaintiff at the address indicated below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if the Summons is not delivered personally to you within the State of New York. Plaintiff designates Kings County as the place of trial. The basis of venue is the Plaintiff's location and the property is within Kings County.

     **YOU ARE HEREBY NOTIFIED** that, should you fail to Answer, a Judgment will be entered against you by Default for the relief requested in the Complaint.

Dated:     Brooklyn, New York
          October 25, 2019

          Joseph Y. Balisok, Esq.

          *Joseph Y. Balisok*

          **BALISOK & KAUFMAN, PLLC**
          251 Troy Avenue
          Brooklyn, NY 11213
          Phone: (718) 928-9607
          Facsimile: (718) 534-9747
          Joseph@LawBalisok.com
          *Attorneys for Plaintiff*

**Page 1 of 24**

To:

Google LLC
c/o Corporation Service Company
80 State Street
Albany, New York 12207

Alphabet Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware 19808

**Page 2 of 24**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------X

YISROEL LEFKOWITZ, on behalf of himself
and all others similarly situated,                                    Index No.:


               Plaintiffs,                              **COMPLAINT**

     v.

GOOGLE LLC, a Delaware limited liability
company; and ALPHABET INC., a Delaware
Corporation,

            Defendants.

------------------------------------------------------------------X

## INTRODUCTION

1.     Plaintiff brings this lawsuit on behalf of himself and all others similarly situated and asserts the following against Defendants Google LLC and Alphabet Inc (collectively referred to as "Defendant").

2.     Plaintiff's claims arise under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* (the "NYCHRL") and the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.* (the "NYSHRL").

3.     Plaintiff's claims also sound under the American With Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* (the "ADA").

4.     Venue is proper in Kings County Supreme Court because Plaintiff is a resident of Kings County and Defendant conducts business in Kings County.

5.     The amount in controversy exceeds the jurisdictional limits of all lower courts.

6.     Plaintiff, YISROEL LEFKOWITZ, at all relevant times, is and was a resident of Kings County and is over the age of 18. Plaintiff is a legally blind individual.

**Page 3 of 24**

7.      Plaintiff's condition severely limits his major life activity of sight. Plaintiff's condition is a disability under the NYSHRL, NYCHRL, and ADA.

8.      Google LLC is a Delaware limited liability company that conducts business in New York and within the State of New York, County of Kings.

9.      Alphabet Inc. is a Delaware corporation that conducts business in New York and within the State of New York, County of Kings.

## NATURE OF THE CASE

10.     This putative class-action lawsuit looks to end the systemic and patterned public-accommodation discrimination perpetrated by Defendant in violation of the City, State, and Federal anti-discrimination laws.

11.     Defendant owns, operates, controls, and administers *inter alia*, gmail.com ("Gmail"). Gmail is an email service developed by Google, a subsidiary of Defendant (both Alphabet Inc. and Google referred to herein as the Defendant). Users can access Gmail on the web and using third-party programs that synchronize email content.

12.     Gmail is unique among its competitors: it offers a streamlined conversation view, configurable density of information, new higher-quality themes, a resizable navigation bar with always-visible labels and contacts, and better search. In April 2018, Google introduced a new redesign that made changes in user interface like the use of Google's Product Sans font. Other updates included a Confidential mode, which allows users to set an expiration date for a sensitive message or to revoke it entirely, integrated rights management, and two-factor authentication

13.     Gmail's "basic HTML" version will work on almost all browsers. The modern AJAX version is officially supported in the current and previous major releases of Google Chrome, Mozilla Firefox, Internet Explorer, Microsoft Edge, and Safari web browsers on a rolling basis.

**Page 4 of 24**

14.    Defendant also owns, operates, controls, and administers, *inter alia*, the Google Chrome web browser ("Chrome").

15.    Chrome is a cross-platform web browser developed by Google. It was first released in 2008 for Microsoft Windows, and was later ported to Linux, macOS, iOS, and Android.

16.    As of July 2019, estimates have been made that Chrome has a 71% worldwide browser market share on traditional PCs and 63.34% share across all platforms.

17.    Chrome is unique among other web browsers because it features a minimalistic user interface, with its user-interface principles later being implemented into other browsers. For example, the merging of the address bar and search bar into the omnibox. Chrome also has a reputation for strong browser performance.

18.    The internet is a critical source of information that provides a primary means for, *inter alia*, communications, the absence of which severely limits everyday activities such as shopping, learning, banking, researching, as well as many other activities for all people, including the sighted, blind, and visually impaired.

19.    Blind and visually impaired persons can access online content using keyboards in conjunction with screen-access software. Software can serve the duel function of vocalizing the visual information found on a computer screen or magnifying web-based content.

20.    Plaintiff is severely visually impaired and uses technology to assist him when accessing online content. Plaintiff uses the ZoomText software to assist him by magnifying content displayed on the screen and/or vocalizing content. Plaintiff typically uses the level "7" magnification setting on ZoomText.

**Page 5 of 24**

21.     ZoomText and other similar software are currently the only methods Plaintiff can employ to independently access the internet (all assistive technology used by Plaintiff hereinafter referred to as "Software").

22.     In addition to the Software, Plaintiff also requires computer-based content to be displayed in high contrast, with white letters on a black background, to fully and equally use computer-based content.

23.     If not designed to be accessible with Software, digital content creates an incredible access barrier to blind and visually impaired persons to the extent that such persons are unable to fully access online content and thus the information and services contained thereon.

24.     Moreover, computer-based content cannot be accessed by Plaintiff if not designed to function properly with high contrast settings.

25.     Software only works, however, if the online content is made compatible with Software. If online content is not made compatible with Software, a blind or visually impaired user cannot access the same content available to sighted users.

26.     The international website standards organization, the World Wide Web Consortium, known as W3C, has published version 2.0 of the Web Content Accessibility Guidelines (WCAG 2.0). WCAG 2.0 are well-established guidelines for making online content accessible to blind and visually impaired individuals. These guidelines are universally followed by most large business entities and government agencies to ensure their online content is accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility.

27.     There are well-established guidelines for making online content accessible to blind persons. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their online content accessible. The Web

**Page 6 of 24**

Case 1:19-cv-06739  Document 2-1  Filed 11/29/19  Page 8 of 26 PageID #: 18

Accessibility Initiative (WAI), a project of the World Wide Web Consortium, has developed guidelines for online accessibility.

28.     The federal government has also promulgated online accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website or other online content can easily access them. These guidelines recommend several basic components for making online content accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, adding headings so that blind people can easily navigate the site, ensuring the online content is viewable when using a different contrast setting, and making the online content viewable with magnifying software. Without these very basic components, online content will be inaccessible to a blind person using Software.

29.     Noncompliant websites or other non-complaint online content pose common access barriers to blind and visually- impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following: a text equivalent for every non-text element is not provided; title frames with text are not provided for identification and navigation; equivalent text is not provided when using scripts; forms with the same information and functionality as for sighted persons are not provided; information about the meaning and structure of content is not conveyed by more than the visual presentation of content; text cannot be resized without assistive technology up to 200% without losing content or functionality; if the content enforces a time limit, the user is not able to extend, adjust or disable it; web pages do not have titles that describe the topic or purpose; the purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context; one or more

**Page 7 of 24**

keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible; the default human language of each web page cannot be programmatically determined; when a component receives focus, it may initiate a change in context; changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component; labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot; in content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique; inaccessible Portable Document Format (PDF) files; the name and role of all user interface elements cannot be programmatically determined; and items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology.

30. Both Chrome and Gmail (collectively referred to as "Defendant's Online Content") fail to comply with these well-settled accessibility standards.

31. Defendant's Online Content is offered to the public and offers features that should allow all individuals to access the goods and services that the Defendant offers.

32. Defendant's Online Content provides goods and services to consumers.

33. Upon information and belief, Defendant maintains a policy and practice of denying Plaintiff, along with other visually impaired and blind users, access to Defendant's Online Content. This policy and practice is systemic and patterned, and it serves to deny access to the goods and services that Defendant offers.

**Page 8 of 24**

34.    Defendant's failure and refusal to remove access barriers to its Online Content has caused Plaintiff and other visually impaired persons to have been and still be denied equal access to the information made available to sighted persons in Defendant's Online Content.

***Chrome is Inaccessible***

35.    During a previous attempt to use the Google Chrome Browser, the last occurring in September 2019, several access barriers were identified that effectively denied Plaintiff full and equal access to Google Chrome.

36.    Primarily, the issues present with Chrome arise from Chrome's incompatibility with computer-based settings regarding contrast and page color.

37.    People with low vision often have difficulty reading text that does not contrast with its background. This can be exacerbated if the person has a color vision deficiency that lowers the contrast even further. Providing a minimum luminance contrast ratio between the text and its background can make the text more readable even if the person does not see the full range of colors. It also works for the rare individuals who see no color.

38.    The multiple accessibility barriers on Chrome include, but are not limited to:

a)    Inability to be used with, or non-compatibility with, computer-based contrast settings. Chrome will still display text in color / non-high contrast regardless of computer settings;

b)    Chrome's internal contrast settings are inaccessible to Plaintiff because the settings do not appear or work in conjunction with magnified pages, rendering the settings wholly inaccessible to Plaintiff. Moreover, the tab key will not function properly on the settings page, which means Plaintiff cannot instead rely on screen-reading software to identify and changes settings;

**Page 9 of 24**

c) Inability to close out of the settings page when attempting to change settings, instead requiring Plaintiff to close the browser and lose other open content.

d) Generally, ZoomText's screen-reading function does not work with Chrome menus and settings.

39.     Due to the inaccessibility of the Chrome browser, blind and visually impaired customers such as Plaintiff, who need assistive technology, cannot fully and equally use or enjoy the goods and services that Defendant offers to the sighted public on Google Chrome.

40.     Google Chrome creates a substantial access barrier for blind and visually impaired individuals who wish to engage web-based browsing activities and transactions through Defendant's Chrome browser, and these access barriers effectively deter blind and visually impaired persons from browsing the internet in a manner equal to sighted individuals.

41.     Because basic compliance with WCAG 2.0 would provide Plaintiff and other visually impaired persons with equal access to Chrome, Plaintiff alleges that Defendant engaged in acts of intentional discriminated against him and the putative class, including, but not limited to, the following policies or practices: constructing and maintaining a web application that is inaccessible to visually impaired persons; failing to construct and maintain a web application that is sufficiently intuitive so as to be equally accessible to visually-impaired persons; failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired persons, such as the Plaintiff, as a member of a protected class; and disparately impacting blind and visually impaired individuals in connection with web browsing.

42.     Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

**Page 10 of 24**

43.     If the Google Chrome was accessible, Plaintiff and similarly situated visually impaired persons could independently browse the internet just a sighted person.

44.     Although Defendant may currently have centralized policies regarding maintaining and operating Google Chrome, Defendant lacks a plan and policy reasonably calculated to make Google Chrome fully and equally accessible to, and independently usable by, blind and other visually impaired persons.

45.     Defendant has, upon information and belief, invested substantial sums in developing and maintaining Google Chrome and has generated significant revenue from it. These amounts are far greater than the associated cost of making Google Chrome equally accessible to visually impaired customers.

***Gmail is Inaccessible***

46.     During a previous attempt to use the Gmail email service, the last occurring in September 2019, several access barriers were identified that effectively denied Plaintiff full and equal access to Gmail.

47.     Primarily, the issues present with Gmail arise from Gmail's incompatibility with computer-based settings regarding contrast and page color and its incompatibility with magnification settings on ZoomText, even when accessed outside of the Chrome browser, which is independently inaccessible as described above.

48.     People with low vision often have difficulty reading text that does not contrast with its background. This can be exacerbated if the person has a color vision deficiency that lowers the contrast even further. Providing a minimum luminance contrast ratio between the text and its background can make the text more readable even if the person does not see the full range of colors. It also works for the rare individuals who see no color.

**Page 11 of 24**

Case 1:19-cv-06739   Document 2-1   Filed 11/29/19   Page 13 of 26 PageID #: 22

49.     The multiple accessibility barriers on Gmail include, but are not limited to:

a)  Inability to be used with, or non-compatibility with, computer-based contrast settings. Gmail will still display text in color / non-high contrast regardless of computer settings;

b)  Inaccessibility of Gmail's command actions;

   i.   Action buttons let users take actions on messages. For example, users can use certain buttons to label, delete, or mark one or more messages as spam. The action buttons are located under the search box and above your messages. When accessed using ZoomText, the action buttons become unusable.

   ii.  Some buttons like "Archive," "Report spam," and "Labels" are only available after selecting one or more messages or opened a message, which Plaintiff cannot do using ZoomText because Gmail is inaccessible.

   iii. The "Select" button allows users to quickly and easily select all or none of the messages, all read or unread messages, or all starred or unstarred messages. Clicking the arrow on the "Select" button will access the various options for selecting messages. The Select button is inaccessible using ZoomText.

   iv.  Inability to take action on all messages due to lack of accessibility of action buttons;

   v.   Inability to quickly navigate through the messages;

c)  Numerous unidentifiable and uncontrollable popups present on the Gmail interface when using ZoomText;

**Page 12 of 24**

FILED: KINGS COUNTY CLERK 10/25/2019 02:29 PM
NYSCEF DOC. NO.

INDEX NO. 523387/2019
RECEIVED NYSCEF: 10/25/2019

Case 1:19-cv-06739  Document 2-1  Filed 11/29/19  Page 14 of 26 PageID #: 24

     d)   Inability to identify the number of unread emails or whether a particular email has been read or not.

50.    Due to the inaccessibility of the Gmail application, blind and visually impaired customers such as Plaintiff, who need assistive technology, cannot fully and equally use or enjoy the goods and services that Defendant makes available to sighted users.

51.    Gmail creates a substantial access barrier for blind and visually impaired individuals who wish to engage email activities and transactions through Defendant's Gmail application, and these access barriers effectively deter blind and visually impaired persons from what Defendant offers to the sighted public on Gmail.

52.    Because basic compliance with WCAG 2.0 would provide Plaintiff and other visually impaired persons with equal access to Gmail, Plaintiff alleges that Defendant engaged in acts of intentional discriminated against him and the putative class, including, but not limited to, the following policies or practices: constructing and maintaining a web application that is inaccessible to visually impaired persons; failing to construct and maintain a web application that is sufficiently intuitive so as to be equally accessible to visually-impaired persons; failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired persons, such as the Plaintiff, as a member of a protected class; and disparately impacting blind and visually impaired individuals in connection with web browsing.

53.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

54.    If Gmail was accessible, Plaintiff and similarly situated visually impaired persons could independently browse the internet just a sighted person.

**Page 13 of 24**

55.     Although Defendant may currently have centralized policies regarding maintaining and operating Gmail, Defendant lacks a plan and policy reasonably calculated to make Gmail fully and equally accessible to, and independently usable by, blind and other visually impaired persons.

56.     Defendant has, upon information and belief, invested substantial sums in developing and maintaining Gmail and has generated significant revenue from it. These amounts are far greater than the associated cost of making Gmail equally accessible to visually impaired customers.

## CLASS-ACTION ALLEGATIONS

57.     This case is brought as and may be maintained as a class action under Article 9 of the CPLR.

58.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify two putative classes defined as follows:

    a)   *The Class*: All visually impaired individuals who reside in the State of New who have attempted to avail themselves of either Google Chrome or Gmail, or both and have been denied full and equal access to such goods and services offered through Google Chrome or Gmail during the relevant statutory period;

    b)   *The NYC Sub-Class*: All visually impaired individuals who reside in the City of New who have attempted to avail themselves of either Google Chrome or Gmail, or both and have been denied full and equal access to such goods and services offered through Google Chrome or Gmail during the relevant statutory period.

59.     Common questions of law and fact exist as to the class, including, but not limited to:

**Page 14 of 24**

a)      Whether Google Chrome and Gmail are "public accommodations" under the NYCHRL, the NYSHRL, and the ADA;

b)      Whether Defendant through Google Chrome or Gmail denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the foregoing laws.

60.      Plaintiff's claims are typical of the class which, like Plaintiff: 1) are visually disabled persons; 2) have claims against Defendant for violations under the NYCHRL, the NYSHRL, and the ADA.

61.      Plaintiff is committed to the vigorous prosecution of this action and will fairly and adequately represent and protect the interests of the class because Plaintiff has retained and is represented by competent counsel.

62.      Plaintiff is an adequate representative of the Class and, together with his attorneys, is able to, and will fairly and adequately, protect the interests of the Class and its members.

63.      Class certification of the claims is appropriate under Article 9 because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

64.      Plaintiff has no interests antagonistic to the interests of the other members of the Class. There is no conflict between Plaintiff and any other members of the Class with respect to this action or the claims for relief herein.

65.      In addition, a class action is superior to other available methods for the fair, just, and efficient adjudication of the claims asserted herein. Joinder of all members of the Class is impracticable and, for financial and other reasons, it would be impractical for individual members of the Class to pursue separate claims. Moreover, prosecution of separate actions by individual

**Page 15 of 24**

members of the Class would create the risk of varying and inconsistent adjudications and would unduly burden the courts.

66.     Class certification is also appropriate because fact and legal questions common to the class predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

67.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

## PUBLIC-ACCOMMODATION CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE N.Y.C. ADMIN. CODE §§ 8-101 *ET SEQ.*

68.     Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

70.     Google Chrome and Gmail are public accommodations within the definition of N.Y.C. Admin. Code § 8-102(9), and both provide a distinguishable and unique service to the public.

71.     Defendant is subject to NYCHRL because it owns and operates Google Chrome and Gmail, the Google Chrome and Gmail are available in the City of New York, and Defendant is a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

**Page 16 of 24**

Case 1:19-cv-06739   Document 2-1   Filed 11/29/19   Page 18 of 26 PageID #: 28

72.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Google Chrome and Gmail, causing Google Chrome and Gmail and the services integrated therewith to be inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

73.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

74.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

   a) constructed and maintained Google Chrome and Gmail in a way that is inaccessible to visually impaired and blind class members with knowledge of the discrimination; and/or

   b) constructed and maintained Google Chrome and Gmail in a way insufficiently intuitive and/or obvious that is inaccessible to visually impaired and blind class members; and/or

   c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired and blind class members.

75.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

**Page 17 of 24**

76.     As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of Google Chrome and Gmail under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

77.     Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

78.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

79.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

80.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
### VIOLATION OF N.Y. EXEC. L. §§ 290, *ET SEQ.*

81.     Plaintiff, on behalf of himself and the Class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

**Page 18 of 24**

83. Defendant's Google Chrome and Gmail are public accommodations within the definition of N.Y. Exec. Law § 292(9). Defendant's Google Chrome and Gmail are also a service, privilege, or advantage of Defendant.

84. Defendant is subject to New York State Human Rights Law because it owns and operates its Chrome and Gmail and does business in this State and is a person within the meaning of N.Y. Exec. Law § 292(1).

85. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to Google Chrome and Gmail, causing Google Chrome and Gmail and the services integrated therewith to be inaccessible to visually impaired and blind persons. This inaccessibility denies blind patrons full and equal access to the facilities, services that Defendant makes available to the non-disabled public.

86. Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

87. Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

**Page 19 of 24**

88. Readily available, well-established guidelines exist on the Internet for making content accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their online content accessible. Incorporating the basic components to make Google Chrome and Gmail accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

89. Defendant's actions constitute willful intentional discrimination against the Class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant has:

a) constructed and maintained Google Chrome and Gmail in a way that is inaccessible to visually impaired and blind persons with knowledge of the discrimination; and/or

b) constructed and maintained Google Chrome and Gmail in a way that is insufficiently intuitive and/or obvious that is inaccessible to visually impaired and blind class members; and/or

c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired and blind class members.

90. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

91. Defendant discriminates and will continue in the future to discriminate against Plaintiff and Class Members on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Google Chrome and Gmail under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff

**Page 20 of 24**

Case 1:19-cv-06739   Document 2-1   Filed 11/29/19   Page 22 of 26 PageID #: 32

and the Class Members will continue to suffer irreparable harm.

92.     Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

93.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

94.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

95.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE ADA, 42 U.S.C. §§ 12181, *ET SEQ.*

96.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person . . . .

42 U.S.C. § 12182(a).

98.     Defendant's Google Chrome and Gmail are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Google Chrome and Gmail are also a service, privilege, or advantage of a public accommodation.

99.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

**Page 21 of 24**

100.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

101.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

102.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)- (2)(A). Furthermore, Plaintiff has been denied full and equal access to Google Chrome and Gmail, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

103.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**Page 22 of 24**

## FOURTH CAUSE OF ACTION
### DECLARATORY RELIEF

104.    Plaintiff, on behalf of himself and the Class and NYC Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

105.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Google Chrome and Gmail contain access barriers denying blind customers the full and equal access to the goods and services and facilities of Google Chrome and Gmail, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

106.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

(a)    A preliminary and permanent injunction to prohibit Defendant from violating the N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

(b)    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its services in full compliance with the requirements set forth in the NYCHRL, NYSHRL, and ADA, and their respective implementing regulations, so that Google Chrome and Gmail are readily accessible to and usable by blind individuals;

(c)    A declaration that Defendant owns, maintains and/or operates Google Chrome and

**Page 23 of 24**

Gmail in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*;

(d)     An order certifying the Classes under Article 9 of the CPLR, appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

(e)     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of their civil rights under New York State Human Rights Law and City Law;

(f)     Pre- and post-judgment interest;

(g)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(h)     Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL-BY-JURY</u>

Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:       Brooklyn, New York
             October 25, 2019

                              Joseph Y. Balisok, Esq.


                              **BALISOK & KAUFMAN, PLLC**
                              251 Troy Avenue
                              Brooklyn, NY 11213
                              Phone: (718) 928-9607
                              Facsimile: (718) 534-9747
                              Joseph@LawBalisok.com
                              *Attorneys for Plaintiff*


**Page 24 of 24**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

——————————————————————— X

YISROEL LEFKOWITZ, on behalf of himself
and all others similarly situated,

      Plaintiffs,

  v.

GOOGLE LLC, a Delaware limited liability
company; and ALPHABET INC., a Delaware
corporation

     Defendants.

——————————————————————— X

Index No.:

**COMPLAINT**

## SUMMONS & COMPLAINT

Attorney certification pursuant
to Section 130-1.1-a of the Rules
of the Chief Administrator (22NYCRR)

_____
Joseph Y. Balisok, Esq.
BALISOK & KAUFMAN, PLLC
251 Troy Avenue
Brooklyn, New York 11213
Office: (718) 928-9607
Fax: (718) 534-9747
Joseph@LawBalisok.com
*Attorneys for Plaintiff*